UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEYNU, INC.,

        Plaintiff,

v.                                            Case Number 07-11707
                                              Honorable David M. Lawson

UNIVERSAL PROPERTY
DEVELOPMENT AND
ACQUISITION CORPORATION,

        Defendant.

_____/

## **OPINION AND ORDER DENYING MOTION TO DISMISS**

The plaintiff has brought an action to collect on a guarantee made by the defendant's predecessor of a promissory note that is in default. Before the Court is the defendant's motion to dismiss on the grounds of lack of personal jurisdiction and failure to state a claim. The plaintiff has filed a fact-laden response, which includes affidavits and copies of documents. The attachments are not properly considered when determining whether the complaint states a cognizable claim for relief, but they are appropriate to support the allegation of personal jurisdiction. The motion was scheduled for argument on December 14, 2007, but the hearing was delayed due to the disqualification of the plaintiff's counsel on conflict-of-interest grounds. The Court has reviewed the submissions of the parties and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2). The Court finds that the defendant has had sufficient contacts with the State of Michigan to justify the exercise of limited personal jurisdiction over it, and the complaint states the elements of a cause of action. Therefore, the motion to dismiss will be denied.

I.

The plaintiff, Aleynu, Inc., known widely as Aish Hatorah is a Michigan religious nonprofit organization. According to the complaint and attached documents, the plaintiff made a loan to Jack B. Wolfe and his wife, Charlene K. Wolfe, in the amount of $330,000 on November 1, 2004, payable on November 31, 2004. The loan is memorialized by a promissory note and guarantee. The guarantors are Loan Giant Bridge Loan, LLC and World Wide Financial Services, Inc., of which Mr. Wolfe is the manager and chief executive officer, respectively, and on whose behalf Mr. Wolfe signed the guarantee. The note is also guaranteed by Pro-Core Group, Inc., the former name of the defendant in this case, and was signed by George Csatary, who at the time was Pro-Core's chief financial officer. No payments have been made on the loan, which is now in default.

Procore was a corporation incorporated in California, with a principal place of business in Ohio; the plaintiff contends that it "was a publicly-traded company listed on the Over the Counter Bulletin Board exchange." Pl.'s Resp. at 6. Procore eventually merged with Universal Property Development & Acquisition Corporation (UPDAC). UPDAC is a corporation incorporated in Nevada, with a principal place of business in Florida. According to Kamal Abdallah, UPDAC's president, the company is not "registered, licensed, or chartered to conduct business in Michigan;" does not have an office, post office box, mailing address, or any "agents, servants, suppliers, vendors, sales representatives, distributors, employees, brokers, or wholesalers living, working, or transacting business of any nature in Michigan"; does not lease or own any property in Michigan; and "does not finance any person or property" in Michigan. Def.'s Mot., Ex. A, Decl. of Kamal Abdallah ¶¶ 4-11. Abdallah also has declared that

> Procore never: (a) was registered, licensed, or chartered to do business in Michigan, (b) had offices in Michigan, (c) maintained or possessed a business account in

> Michigan, (d) paid any taxes in Michigan, (e) had a post office box or mailing address in Michigan, (f) leased, owned, or held any interest in real or personal property in Michigan, (g) financed any person or property in Michigan, (h) had agents, servants, suppliers, vendors, sales representatives, distributors, employees, brokers, or wholesalers living, working, or transacting business of any nature in Michigan on its behalf, or (i) kept any documents relating to its formal business, including financial statements and tax returns, in Michigan.
> Def.'s Mot., Ex. A, Decl. of Kamal Abdallah ¶ 14.

The plaintiff vigorously disputes these statements, believing that Procore has had more extensive interactions with the state.

Another loan guarantor, World Wide Financial Services, is a sub-prime home mortgage lender located in Southeastern Michigan since 1994. Pl.'s Resp. at 7. Mr. Wolfe was (and may still be) the CEO of World Wide Financial Services. In 2000, World Wide expanded its business to the Internet, with a presence as LoanGiant.com. World Wide was set to execute a plan that it believed would "dramatically reduce the costs to originate loans for World Wide by phasing out the loan officer and his/her expensive variable commission payout." *Id.* at 9. World Wide also planned to establish an "offshore contact center" to "reduce its costs per transaction."

At the time, World Wide worked with General Motors Acceptance Coalition's subsidiary, Residential Funding Corporation ("GMAC-RFC") to generate and process loans, but World Wide suffered a near-fatal setback in October 2003 when GMAC-RFC suspended its relationship with World Wide, and on January 12, 2004 permanently cancelled the relationship. Apparently Wolfe then set about a course of action to obtaining financing to save the company.

According to the plaintiff, on February 27, 2004, World Wide and Procore executed a joint venture agreement, where World Wide paid Procore $50,000 and Procore leased office space from World Wide in Southfield, Michigan. The joint venture agreement submitted with the defendant's motion dated Feb. 27, 2004, does not contain these terms, but does reference an "ancillary

agreement" between a Good Faith Financial Company and World Wide for a sublease. This agreement was signed by a Charles W. Harper, Procore's treasurer. Instead, the joint venture agreement calls for Procore to invest one million shares of stock into World Wide and another company known as Ten and Ten Marketing Group, LLC (about which no other information exists in the parties' filings). The agreement also calls for Mr. Wolfe to be offered a position on the Procore board of directors if World Wide invests at least one million dollars by June 30, 2004. It is unclear what became of this agreement; the defendant notes only that "[u]nfortunately, no mortgage business materialized from the [Procore] relationship." Pl.'s Resp., ex. B at 12.

On September 7, 2004, the State of Michigan Office of Financial and Insurance Services issued World Wide a cease and desist order, that "did not stop World Wide from operating" but "resulted in negative television and radio coverage of World Wide." *Id.* at 13. Reacting to the resulting decline in business, World Wide attempted to merge with Procore. According to the plaintiff, a letter of intent was signed on October 15, 2004. *Ibid.* A second letter of intent is dated November 1, 2004, and is attached to Jack B. Wolfe's affidavit. *Id.*, ex. A at 5-13. George Csatary, Procore's CFO, signed the second letter on behalf of Procore. *Id.*, ex. A at 12. Under this agreement, Procore would purchase the assets of World Wide using money from the sale of real property owned by Carl Popp (whose relationship to the other parties is unclear, except that he invested in Procore). *Id.* at 12-13. Specifically, the second amended letter of intent purports to "summarize[] the terms upon which ProCore Group, Inc. . . . ("Buyer"), intends to purchase the assets of World Wide Financial Services, Inc., d/b/a/ LoanGiant.com ("Seller"), and the 96,000 square foot, fully leased, building located at 26500 Northwestern Highway, Southfield, Michigan (the "Building")." *Id.*, ex. A at 5. The second letter of intent contemplates several transactions,

which are not germane to the promissory note, but impacted the possible merger between World Wide and Procore.

The plaintiff claims that World Wide needed $300,000 before November 1, 2004, to "maintain operations . . . and to prevent [its] Building from going into foreclosure," but the proposed merger was not completed in time. *Id*. at 13. According to an affidavit filed by Mr. Csatary, the guaranty was made by Procore because it "both at the time made and in the future [was] expected to benefit [Procore]." *Id.,* ex. J, Aff. of George Csatary ¶ 6. In contrast, the defendant claims that neither Procore nor UPDAC received any benefit from the guaranty. Def.'s Mot. at 2.

To obtain the money, Mr. Wolfe identified Jacob Fetman of New York through his rabbi as a source of funding. Mr. Fetman agreed to loan the money to the plaintiff non-profit organization, Aleynu, who in turn transferred the money to World Wide. Pl.'s Resp. at 13. The plaintiff claims that the money was routed through a Comerica bank account opened by Procore in Southfield, Michigan. *Id*. at 16.

Mr. Wolfe signed a promissory note dated November 1, 2004. As noted earlier, his promise was guaranteed by Loan Giant Bridge Loan, LLC, and World Wide Financial Services, Inc., two entities for whom Mr. Wolfe signed. George Csatary signed the note on behalf of Procore Group, Inc., as a guarantor. The note recites that it was made "November 1, 2004" in "Southfield, Michigan." Compl. ex. A. The plaintiff contends that at the time, George Csatary was Chief Financial Officer of Procore Group, as well as a member of the board of directors, and Interim Chairman. Pl.'s Resp. at 18.

In 2005, Procore merged with UPDAC, and UPDAC has admitted to being the successor to Procore for this litigation. *Id.,* ex. A, Decl. of Kamal Abdallah ¶12. The complaint alleges that

neither Mr. Wolfe nor any guarantor paid the principal sum or any interest by the maturity date or afterwards. Compl. ¶¶ 19-20. As of March 31, 2007, the outstanding principal and interest is alleged to be $519,750.00. Compl. ¶

II.

The defendant argues that it has no substantial contact with Michigan and therefore the Court ought not exercise general personal jurisdiction over it. The defendant also maintains that the present claim did not arise out of activities by either UPDAC or Procore in Michigan, since there are no indications that George Csatary actually signed the guaranty while in Michigan, and Procore received no consideration in exchange for the guaranty. Finally, the defendant argues that any contacts there may be are not substantial enough to make reasonable the exercise of jurisdiction over the defendant.

In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The court may then proceed in one of three ways: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Ibid.* The Court finds that the first method is sufficient in this case.

"In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment." *Bagsby*

*v. Gehres*, 195 F. Supp. 2d 957, 961 (E.D. Mich. 2002) (citing *Neogen Corp.*, 282 F.3d at 888). In Michigan, jurisdiction over the person can exist on the basis of general personal jurisdiction, *see* Mich. Comp. Laws §§ 600.701 and 600.711, or limited personal jurisdiction, *see* Mich. Comp. Laws §§ 600.705 and 600.715. General personal jurisdiction exists over any corporation that is incorporated in Michigan, consents to jurisdiction, or engages in continuous and systematic business in Michigan. Mich. Comp. Laws § 600.711. Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum, but only over claims which arise from or relate to those contacts. *Theunissen*, 935 F.2d at 1460. Michigan law authorizes limited personal jurisdiction over a defendant corporation if has one of the following relationships with the state:

> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715.

Even if the plaintiff has satisfied the demands of a statutory grant of jurisdiction, the statute is circumscribed by the Due Process Clause. Jurisdiction over a non-resident is consistent with due process only if the "facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945)).

General jurisdiction is consistent with due process when the corporation's relationship with the state is "of a continuous and systematic nature." *Helicopteros*, 466 U.S. at 421 (internal quotations omitted). Sporadic or temporary contacts for a particular purpose are not sufficient to establish general jurisdiction. *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996); *see also Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.*, 918 F.2d 1039, 1046 (2nd Cir. 1990) (holding that thirteen business trips made by different employees of defendant over eighteen months was insufficient for general jurisdiction).

Even if there are not sufficient "continuous and systematic" contacts to give rise to general jurisdiction, jurisdiction for a specific case may be consistent with the due process clause. The Sixth Circuit has identified three considerations to determine whether personal jurisdiction extends to the defendant in a particular case:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 internal quotations omitted).

If the first two elements are met, an "inference of reasonableness arises . . . [and] only the unusual case will not meet this third criterion." *Id.* at 1461 (internal quotations and citations omitted). Simply entering into a contract with a party in a state is not sufficient for jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.

-8-

This Court previously has found that a Texas company who engaged a consultant in Michigan to negotiate a contract with a Michigan entity had sufficient contacts with the state to establish limited jurisdiction for claims regarding the breach of that contract. *Salom Enterprises, LLC v. TS Trim Industries, Inc.*, 464 F. Supp. 2d 676 (E.D. Mich. 2006). This Court wrote:

> Through its negotiation of the contract, the defendant bound itself to pay money to an entity that it should have known was operating in Michigan. By doing this, the defendant deliberately engaged in significant activities in the forum state, making the exercise of jurisdiction presumptively reasonable. . . . The defendant agreed to pay a substantial sum of money to the plaintiff knowing that the plaintiff was based in Michigan, and . . . it would appear the contract contemplated the defendant forwarding these payments to the plaintiff in Michigan.

*Id.* at 685, 687.

It is not clear whether the defendant is asserting general jurisdiction or specific jurisdiction, and neither the plaintiff nor the defendant discuss jurisdiction under Michigan law, but instead focus their arguments on the Due Process Clause. With this argument, the defendant apparently has conceded that there would be jurisdiction for the purposes of this case under some Michigan law, if that jurisdiction is consistent with Constitutional limits. Indeed, given the breadth of the Michigan long-arm statutes, guarantying a loan negotiated and executed in Michigan certainly is sufficient under Michigan law. *See* Mich. Comp. Laws § 600.715(1) & (5).

Likewise, it is not necessary to address the matter of general personal jurisdiction under the Due Process Clause because the facts established in the affidavits or other evidence offered by the plaintiff, accepted as true, demonstrate a sound basis for exercising limited personal jurisdiction for the purposes of enforcing the loan guaranty. The plaintiff claims that Mr. Csatary was acting on behalf of Procore when he signed the guaranty, which was apparently executed in Southfield, Michigan between several Michigan entities. Indeed, the plaintiff claims (and supports this claim

with affidavits from Mr. Wolfe and Mr. Csatary, and a Joint Venture agreement) that Procore sought to enter the southeastern Michigan real estate loan market by entering into a partnership with World Wide, and this desire motivated the loan. The plaintiff claims that Procore set up a bank account to administer the loan, and in a related transaction entered into a lease of a building in Michigan. *See Burger King*, 471 U.S. at 479 (holding that course of dealing relevant to limited jurisdiction inquiry). The purposes of the loan was to further Procore's plan to expand its business to Michigan. *See ibid.* (holding that "contemplated future consequences" relevant to limited jurisdiction inquiry). Accepting these facts, there are sufficient contacts with Michigan to require the defendant to litigate the present claim in a Michigan court. Therefore, the Court will deny the motion to dismiss on personal jurisdiction grounds.

### III.

The defendant next contends that the plaintiff's claim fails as a matter of law for two reasons: first, there was no "benefit" that accrued to either UPDAC or Procore, and therefore the guaranty is unenforceable as to it; and second, Mr. Csatary was not acting with actual or apparent authority to bind Procore. The plaintiff has alleged in the complaint that Mr. Csatary possessed authority to sign the note, and has alleged facts sufficient to find that Mr. Csatary possessed actual or apparent authority to bind Procore with the guaranty.

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, the court must

construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid.* Federal Rule of Civil Procedure 8(a) requires that the complaint give the defendant fair notice of the nature of the claim and the factual grounds upon which it rests. *Twombly*, 127 S.Ct. at 1964. Therefore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detail factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted) (alteration in original). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (1984)); *see also Ana Leon T. v. Fed. Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review).

The case is before the Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and the plaintiff's claim is based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (*quoting Bailey*

*v. V&O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data includes the state's intermediate appellate court decisions, as well as the state supreme court's relevant dicta, restatements of the law, law review commentaries, and the majority rule among other states." *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001) (internal quotes and citation omitted).

Under Michigan law, the elements of a valid contract are the following: (1) parties competent to [enter into] a contract, (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich. App. 418, 422, 468 N.W.2d 58, 60 (1991). "In order to form a valid contract, there must be a meeting of the minds on all the material facts." *Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich. App. 543, 548, 487 N.W.2d 499, 503 (1992). "'Meeting of the minds' is a figure of speech for mutual assent." *Id.* at 548-49, 487 N.W.2d at 503. "A contract is made when both parties have executed or accepted it, and not before." *Id.* at 549, 487 N.W.2d at 503. The party seeking to enforce the contract has the burden to show the existence of the contract. *Ibid.*

"[A] corporation may only act through its officers and agents." *Btuun v. Cook*, 280 Mich. 484, 495, 1273 N.W. 774, 779 (1937). As a result, a corporation is "responsible for the acts of its agents done within the scope of the agent's authority." *Dick Loehr's, Inc. v. Sec'y of State*, 180 Mich. App. 165,. 168, 446 N.W.2d 624, 626 (1989). The corporation is also bound on apparent authority principles "in all cases where the agent is acting within the scope of his usual employment, or has held out to the public, or to the other party, as having competent authority, although, in fact, he has, in the particular instance, exceeded or violated his instructions, and acted without authority." *Ibid.* The principal must in some way create the perception of authority, as apparent authority "cannot be

established by the acts and conduct of the agent. In determining whether an agent possesses apparent authority to perform a particular act, the court must look to all surrounding facts and circumstances." *Meretta v. Peach*, 195 Mich. App. 695, 699, 491 N.W.2d 278, 280 (1992). By placing an agent "in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act," the principal is estopped from denying agency. *Ibid.* These are factual questions that are appropriate for a jury to resolve. *Id.* at 697, 491 N.W.2d at 269. A corporation may also ratify the unauthorized actions of an agent.

Whether an agent may bind the principal on a guaranty contract requires a higher showing than most contract cases. The Michigan Supreme Court has held:

> Authority to bind the principal by a contract of guaranty or suretyship is not ordinarily to be implied from the existence of a general agency . . . [because it] is extraordinary and unusual and so not normally within the powers accruing to an agent by implication, however general the character of the agency; ordinarily the power exists only if expressly given.

*Hearst Pub. Co. v. Litsky*, 339 Mich. 642, 645, 64 N.W.2d 687, 689 (1954) (internal quotations and citations omitted).

The parties dispute many of the facts alleged in the complaint. However, on a motion to dismiss, the fact disputes must be resolved in favor of the non-moving party. Here, the plaintiff has alleged facts sufficient to establish that Mr. Csatary was acting with actual or apparent authority when he signed the guaranty. Although the present record is perhaps meager as to Mr. Csatary's actual authority, Csatary's position as Chief Financial Officer, and his active participation in the negotiation of the merger between Procore and World Wide (evidenced by his signature on a

November 1, 2004, letter of intent contemplating the merger) are sufficient to establish that he at least had the apparent authority to bind Procore.

The plaintiff has pleaded the elements of a claim of breach of a loan guarantee. Therefore, the motion to dismiss for failure to state a claim will be denied.

IV.

The Court finds that the defendant's activities in the State provide a basis for the exercise of limited personal jurisdiction. In addition, the complaint states a cause of action on the guarantee for which relief may be granted.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt #6] is **DENIED**.

It is further **ORDERED** that counsel for the parties appear before the Court for a status conference on **September 23, 2008 at 4:30 p.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 5, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 5, 2008.

s/Felicia M. Moses
FELICIA M. MOSES